Mr. Chief Justice Sharkey
delivered°the opinion of the Court.
This suit was instituted on the bond of Mrs. Russell as adminis-tratrix ad colligendum on the estate of James Luckett, her former husband.
We shall confine our remarks to two of the grounds assigned for error ; first, that the Court erred in sustaining the demurrer to the defendants’ special plea ; and, second, that the Court erred in amending the judgment at a subsequent term.
*246 The defendants craved oyer of the bond and condition ; and two of them, to wit, Brock and Henderson, pleaded specially that they were sureties of Amelia Russell, and conceiving themselves in danger of suffering on account of their suretyship, they petitioned the Probate Court for relief; whereupon, the' said Amelia Russell, together with her husband R. B. Russell, with whom she had intermarried, voluntarily came into Court, and the Court thereupon ordered that letters of administration ad colligendum on the estate of James Luckett, be granted to R. B. Russell and Amelia Ann Russell, they having taken the oath, and entered into bond, with Ignatius Flowers, Joseph F. Brock, and Richard J. Bland as sureties ; in compliance with which order, the said Russell and wife entered into a new bond, which bond was approved by the Court. The bond is set out in the plea, which is in conformity with the provisions of the 46th section of the law in relation to the estates of decedents, H. & H. Dig. 198, the recital and condition being in the following words : “ The condition of the above obligation is, that whereas the above bound Amelia A. Russell, administratrix ad colligendum of the goods, chattels, and credits of James Luckett, deceased, heretofore executed a bond payable to N. McDougall, Esq., Judge of Probate, and conditioned for the discharge of her duties qs ad-ministratrix ad colligendum aforesaid, which said bond bears date 1st March, 1838 ; and whereas the said Amelia A. Russell (late Amelia A. Luckett) has since intermarried with Robert B. Russell; now, therefore, if the said administratrix and administrator ad colli-gendum as aforesaid, shall well and truly have kept and performed, and shall well and truly keep and perform the condition of the said bond aforesaid, and shall in all respects have performed, and shall continue to perform the duties of their office aforesaid, then this obligation to be void, otherwise it shall remain in full'force and virtue.” The plea avers, that at the time of executing the last bond, no suit or action was pending on the first bond, and sets up the last bond as a bar to the action. The statute seems to be too plain to leave any doubt as to the legal effect of the second bond on the sureties in the original. The 46th section provides, that where sureties for executors or administrators consider themselves in danger of suffering, and petition the Court for relief, the Court shall summon the *247 executor or administrator, and shall have full power to order that counter security be given, or that a new bond be executed with good security. The statute declares that such new bond shall relate back to the time of granting the letters, and shall be as effectual in every respect, as if it had been given before the grant of the letters. It also prescribes the form of the condition, which corresponds with that set out in the plea. The 47th section declares,'that upon the execution of the-new bond, all the sureties to the former bond, and their legal representatives, shall be forthwith discharged from the obligation thereof, except only as to actions pending on the original. The 48th section provides, that if an executor or administrator shall fail to comply with the order of the Court for counter security, or for a new bond, the Court may revoke his authority. Under these •several provisions it is manifest, that sureties who apply for relief, are absolutely discharged from all liability where new bond is given. The law furnishes them with a bar to any action which may after-wards be brought on the original bond.
The principal objection taken to the plea is, that the grant of administration to R. B. Russell, or the new grant of administration was void, because Amelia Russell had not been removed, and that no new administration can be granted without removing the first administrator. The answer to this objection is plain. No new administration was granted. New security was taken for the previous and subsequent faithful administration. In requiring Russell to join in the bond, the Court was but carrying out the legal consequences of the marriage of the administratrix. By the marriage,, Russell became united with his wife in the administration ; and when she was called on to execute new bond, it was of course proper that he should join in it. The bond recites the reason why Russell is joined in it, to wit, his intermarriage with the administratrix since the giving of the first bond. The Court did not profess either to remove the admin-istratrix, or to grant new administration. It would be singular, indeed, if a Court should require a new administrator to execute a bond that his predecessor had discharged his duty. The proceedings of the Court do not admit of such interpretation. The demurrer to the pleaj then, should have been overruled.
In the next place, had the Court power to amend the judgment *248 at a subsequent term ? The judgment was rendered at May term, 184L, and the amendment was made at December term, 1842. When the demurrer to the plea was sustained, the defendants refused to plead over, and the Court proceeded to render a judgment against all of the defendants for $ 15,480.66 damages. This judgment was manifestly erroneous. The plaintiff had assigned breaches in his declaration, and his right torecover depended on the proof of those breaches, and of the damages consequent thereon. The Court cannot assess damages for the breach of a condition of a bond, any more than it can in any other case of unliquidated damages. It was necessary that a writ of inquiry should have been awarded. To obviate this difficulty, a motion was made at a subsequent term to amend the judgment. In support of the motion, a memorandum, on the back of the declaration, made at May term, 1841, was introduced, which is in these words : “ The defendants having failed to answer over, judgment ordered by default and consent for $15,480.'66, 18th day.” The words “and consent” were interlined in the memorandum in the handwriting of the Judge. It also appeared from parol proof that at the May term, 1841, the .judgment was rendered by consent of the defendants5 attorneys, and that the amount was settled by calculation'between the counsel. Courts may amend the mistakes.or errors of their clerks, provided there is anything in the record or proceedings to amend by ; but, at a subsequent term, they cannot amend their own judgments, unless it be in such a way as provided for by the statute. But in no case can an amendment be made, unless there be something in the proceedings to amend by. 1 J. J. Marshall’s Rep. 362; 1 Bac. tit. Amendment of Judgment. This memorandum constituted no part of the proceedings in the cause. r It amounts only to parol proof. It is no better than were the Judge’s notes on the docket, which were held to be insufficient to amend by in the case of Dickson v. Hoff’s Adm’r. 3 Howard, 165. In the case of Walker v. Commissioners of the Sinking Fund, decided at July term, 1843, this Court also announced the doctrine that amendments cannot be made at a subsequent term, unless it be done in compliance with the statute. A record cannot be amended by parol. The courts in England have gone far in making amendments, but they do not amend their solemn *249 judgments, unless the mistake is apparent from the record. This was rather taking proof in support of a judgment than an amendment. At one term a judgment was entered, without any showing in the record that an inquiry had been awarded, and a finding returned by the jury ; or that any confession of record had been made, which, perhaps, would have been sufficient; and at a subsequent term, and that too after a writ of error had been taken, the Court heard proof of facts in support of the judgment, and entered a new judgment nunc pro tunc. In support of the amendment, counsel have insisted, that the first judgment was a mis-entry — a mere nullity, without anything to support it, and the Court had a right to disregard it. This admission would give up the case. How could the Court afterwards undertake to render a judgment for damages without a verdict ? Counsel resisted the second judgment, and placing the first out of the question, then all the admissions and calculations of damages, which had taken place at the previous term, were but proper evidence for a jury. They were not admissions of record, and could only be used as other admissions of a party to a suit, as evidence of the plaintiff’s right, and the extent of that right. A Court might as well undertake to render a judgment on an open account, on the ground that it had been admitted to be just. So that if it was an amendment of the judgment, it was an error; and if, on the other hand, it was the entry of a new judgment, treating the first as a nullity, it was also an error.
It is possible the merits of the case may be such as to induce the Court below to allow the plaintiff to amend, by replying to the defendant’s plea; and the judgment will therefore be reversed, and the cause remanded.